UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **DEANNA HICKS,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**HOUSTON BAPTIST UNIVERSITY,** a Delaware corporation,<br><br>*Defendant*. | Case No. :<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff DeAnna Hicks ("Hicks" or "Plaintiff Hicks") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Houston Baptist University ("HBU" or "Defendant") to (1) stop its practice of placing calls using an "automatic telephone dialing system" to the cellular telephones of consumers nationwide without their prior express written consent; (2) enjoin Defendant from continuing to place autodialed telephone calls to consumers who did not provide their prior express written consent to receive them - and even to those on the National Do Not Call Registry- and (3) obtain redress for all persons injured by its conduct. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### NATURE OF THE ACTION

1. Senator Hollings, one of the [Telephone Consumer Protection Act's ("TCPA")] sponsors, described computerized calls as "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone cord out of the wall." 137 Cong. Rec. 30, 821 (1991).

Senator Hollings presumably intended telephone subscribers another option: telling the autodialers to simply stop calling." *Osario v. State Fram Bank, F.S.B.,* 746 F.3d 1242, 1256 (11th Cir. 2014). Thus, the TCPA was enacted to empower the private citizen and to protect the privacy (and perhaps the sanity) of consumers nationwide.

2. But, unfortunately, computerized calls continue to increase and further invade the privacy of millions of consumers. Last year, in 2016, 4 million complaints related to unwanted calls were lodged with the Federal Communications Commission (the "FCC").[1] This number is markedly higher than the previous year, which yielded 2.6 million complaints (which rose from the year before that).[2] Notably (and inauspiciously), many consumers who have been subjected to illegal calling activity do not report each instance of illegal calling activity, and the actual number of consumers affected by illegal calls is significantly higher.

3. Here, Defendant HBU contacts consumers *without their prior express written consent* in an effort to solicit their business with respect to signing up for college classes at HBU.

4. Accordingly, this case addresses HBU's repeated pattern of practice of calling consumers on their cellular telephones using an autodialer who have no direct relationship with HBU. Defendant conducted (and continues to conduct) a wide-scale solicitation campaign that features the repeated making of unwanted autodialed phone calls to consumers' cellular

---

[1] *National Do Not Call Registry Data Book FY 2016, October 1, 2015 - September 30, 2016,* FEDERAL TRADE COMMISSION (Dec. 2016), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2016/dnc_data_book_fy_2016_post.pdf; *Consumer Complaints Data - Unwanted Calls, FCC - Open Data,* FEDERAL COMMUNICATIONS COMMISSION, https://opendata.fcc.gov/Consumer-and-Government-Affairs/Consumer-Complaints-Data-Unwated-Calls/vakf-fz8e.

[2] *National Do Not Call Registry Data Book FY 2015,* FEDERAL TRADE COMMISSION (Nov. 2015), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2015/dncdatabookfy2015.pdf: *Consumer Complaints Data - Unwanted Calls, FCC - Open Data,* FEDERAL COMMUNICATIONS COMMISSION, https://opendata.fcc.gov/Consumer-and-Government-Affairs/Consumer-Complaints-Data-Unwanted-Calls/vakf-fz8e; *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones,* FEDERAL COMMUNICATIONS COMMISSION, https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf; *National Do Not Call Registry Data Book FY 2014,* FEDERAL TRADE COMMISSION (Nov. 2014), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2014/dncdatabookfy2014.pdf.

telephones without prior express written consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

5. By making these autodialed calls, Defendant caused Plaintiff and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such calls, in addition to the wear and tear on their cellular telephones, consumption of battery life, lost cellular minutes, loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls, in the form of the diminished use, enjoyment, value, and utility of their cellular telephone plans. Furthermore, Defendant made the calls knowing they interfered with Plaintiff and the other Class members' use and enjoyment of, and the ability to access their cellphones, including the related data, software, and hardware components.

6. The TCPA was enacted to protect consumers from autodialed telephone calls like those alleged and described herein. In response to Defendant's unlawful conduct, Plaintiff files this lawsuit seeking injunctive relief, requiring Defendant to cease all autodialed telephone calling activities to cellular telephones without first obtaining prior express written consent, as well as an award of statutory damages to the members of the Classes under the TCPA, costs, and reasonable attorney's fees.

**PARTIES**

7. Plaintiff Hicks is a natural person and resides in Youngsville, North Carolina.

8. Defendant HBU is a corporation with a principal place of business located at 7502 Fondren Road, Houston, Texas, 77074. Defendant conducts business throughout this District, the State of North Carolina, and the United States.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute. This Court has personal jurisdiction over Defendant because Defendant conducts a significant amount of business in this District, solicits consumers in this District, made and continues to make unwanted autodialed solicitation calls in this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts a significant amount of business within this District and markets to this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Furthermore, venue is proper because Plaintiff resides in this District.

## COMMON FACTUAL ALLEGATIONS

11. Defendant is a private university and contacts consumers to solicit them to sign up for college classes using an Automated Telephone Dialing System ("ATDS").

12. As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded [solicitation] calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

13. Yet in violation of this rule, Defendant fails to obtain any prior express written consent to make these autodialed solicitation calls to cellular telephone numbers.

14. In placing the calls that form the basis of this Complaint, Defendant utilized an ATDS in violation of the TCPA. Specifically, the hardware and software used by Defendant has

the capacity to generate and store random numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers and disconnecting the rest (all without human intervention).

15. In fact, HBU advertises its autodialing technology on its very own website, as shown below:



16. The above image states that by signing up on HBU's website, a consumer agrees to be subject to "[HBU] contacting [the consumer] about educational opportunities via text, email, phone, including [the consumer's] mobile phone if provided, and those calls may be placed using an autodialer."[3] [4]

---

[3] http://onlinenursing.hbu.edu/privacy/.
[4] Plaintiff never provided her number to HBU.

5

17. When placing these calls to consumers, Defendant failed to obtain prior express written consent as required by the TCPA from cellular telephone owners/users to make such calls.

18. At all times material to this Complaint, Defendant was and is fully aware that unwanted autodialed telemarketing calls are being made to consumers' cellular telephones through its own efforts and their agents.

19. Defendant knowingly made (and continues to make) autodialed solicitation calls to cellular telephones without the prior express written consent of the call recipients. In so doing, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF DEANNA HICKS

20. On August 11, 2006, Plaintiff Hicks' cellular telephone number was registered on the National Do Not Call Registry.

21. Plaintiff Hicks became a registered nurse after studying at Austin Community College (hereinafter "ACC").

22. While studying at ACC, Hicks signed a document with ACC that stated that ACC would not share nor sell her information with any other schools or organizations.

23. On September 13, 2017 at 1:55 p.m., and more than 30 days after Hicks' telephone number was registered on the National Do Not Call Registry, Hicks began receiving unwanted autodialed solicitation calls from telephone number 888-688-1710 (the "1710 Number"). The agent calling from the 1710 Number left a voice message. During the voice message, the live agent explained that she was calling "on behalf of Houston Baptist University" and encouraged Hicks to contact HBU to learn more about what it can offer her by calling 844-326-3019 or going online to visit http://onlinenursing.hbu.edu/. The webpage the operator

6

directed Plaintiffs Hicks to describe their program where a registered nurse such as Plaintiff Hicks can enroll in HBU's paid curriculum to earn a Master of Science in Nursing (MSN) or a Bachelor of Science in Nursing which can "launch registered nurses ahead."[5] The webpage advertises that these programs can be completed fully online. The programs cost anywhere from $11,475 to $18,000 in tuition.

24. The next day, on September 14, 2017 at 9:41 a.m., Hicks received another call from the 1710 Number (the "September 14th Call").

25. Upon answering the September 14th Call, Hicks noticed a slight pause. This artificially long pause is indicative of the caller using an autodialer to place the calls.

26. During the September 14th Call, HBU again solicited Hicks to sign up for their online programs and their HBU agent explained to Hicks that HBU had partnered with her former school, although, curiously, HBU's agent did not specifically state Hicks' former school by name (ACC) until Hicks herself mentioned her former school's name.

27. During the September 14th Call, Hicks demanded that HBU stop calling her.

28. HBU owns/operates and/or utilizes the 1710 Number to place solicitation calls to potential consumers.

29. Hicks does not have a relationship with HBU, or any of its affiliated companies, or has ever requested that HBU place calls to her. Simply put, HBU did not possess Hicks' prior express written consent to place a solicitation telephone call to her on her cellular telephone using autodialer and Hicks has no business relationship with HBU. Hicks even contacted her former nursing school ACC to ensure that it did not share or sell her information. ACC replied that it had not shared her information.

---

5 http://onlinenursing.hbu.edu/

30. By making unauthorized autodialed telephone calls as alleged herein, HBU has caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the calls disturbed Hicks' use and enjoyment of her cellular telephone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on Hicks' cellular telephone. In the present case, a consumer could be subjected to many unsolicited collection calls as HBU does not take care to ensure that the recipients of its autodialed solicitation calls have given their prior express written consent to be called, even those on the National Do Not Call Registry.

31. In order to redress these injuries, Hicks, on behalf of herself and a class of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed telephone calls to cellular telephones.

32. On behalf of the Classes, Plaintiff seeks an injunction requiring Defendant to cease all unsolicited autodialed telephone calling activities and an award of statutory damages to the class members, together with costs and reasonable attorney's fees.

## CLASS ALLEGATIONS

33. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and all others similarly situated and seeks certification of the following two Classes:

> **Autodialed No Consent Class:** All persons in the United States from four years prior to the filing of this action through the present who (1) Defendant (or a third person acting on behalf of Defendant) called, (2) on the person's cellular telephone, (3) using an autodialer, and (4) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff.

**Do Not Call Registry Class**: All persons in the United States who (1) Defendant (or a third person acting on behalf of Defendant) called more than one time on his/her cellular telephone; (2) within any 12-month period (3) where the cellular telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiff.

34. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the class definition following appropriate discovery.

35. **Numerosity**: The exact size of the Classes are unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant placed autodialed solicitation calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be easily identified through Defendant's records.

36. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether Defendant's conduct constitutes a violation of the TCPA;

(b) whether Defendant systematically made telephone calls to members of the Classes without first obtaining prior express consent to make the calls;

(c) whether Defendant utilized an automatic telephone dialing system to make its calls to members of the Classes;

(d) whether Defendant systematically made multiple telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry;

(e) whether Defendant made autodialed telephone calls to members of the Classes without first obtaining prior express written consent to make the calls;

(f) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct; and

(g) whether Defendant obtained prior express written consent to contact any class members.

37. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to the Classes.

38. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by

Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**FIRST CAUSE OF ACTION**
Telephone Consumer Protection Act
(Violations of 47 U.S.C. § 227 *et seq.*)
(On Behalf of Plaintiff and the Autodialed No Consent Class)

39. Plaintiff incorporates the foregoing factual allegations as if fully set forth herein.

40. Defendant made autodialed solicitation telephone calls to cellular telephone numbers belonging to Plaintiff and other members of the Autodialed No Consent Class without first obtaining prior express written consent to receive such calls.

41. Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers using a random or sequential number generator, to receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention.

42. The telephone dialing equipment utilized by Defendant, also known as a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner. Defendant's autodialer disseminated information *en masse* to Plaintiff and other consumers.

43. By making the unwanted solicitation telephone calls to Plaintiff and the Autodialed No Consent Class members' cellular telephones without their prior express consent, and by utilizing an autodialer to make those calls, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

11

44. As a result of Defendant's unlawful conduct, Plaintiff and the members of the Autodialed No Consent Class are each entitled a minimum of Five Hundred Dollars ($500.00) in damages for each such violation of the TCPA.

45. In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed No Consent Class.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

46. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

47. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

48. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

49. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the FCC's July 3, 2003 Report and Order, which in turn, provides as follows:

12

The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.[6]

50. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made),

---

[6] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

51. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

52. Defendant also violated 47 C.F.R. § 64.1200(d) by failing to have a written policy of dealing with do not call requests, by failing to inform or train its personnel engaged in telemarketing regarding the existence and/or use of any do not call list, and by failing to internally record and honor do not call requests.

53. Defendant made more than one unsolicited telephone call to Plaintiff and other members of the Do Not Call Registry Class within a 12-month period without their prior express consent to receive such calls. Plaintiff and other members of the Do Not Call Registry Class never provided any form of consent to receive telephone calls from Defendant, and/or Defendant does not have a current record of consent to place telemarketing calls to them.

54. Defendant violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Do Not Call Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

14

55. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

56. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

57. An order certifying the Classes as defined above, appointing Plaintiff DeAnna Hicks as the representative of the Classes, and appointing her counsel as Class Counsel;

58. An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

59. An order declaring that Defendant's actions, as set out above, violate the TCPA;

60. A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

61. An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

62. An order requiring Defendant to identify any third-party involved in the autodialing as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

63. An injunction requiring Defendant to cease all unsolicited autodialed calling activities, and otherwise protecting the interests of the Classes;

64. An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment;

65. An injunction prohibiting Defendant from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA;

66. An injunction prohibiting Defendant from conducting any future autodialing activities until it has established an internal Do Not Call List as required by the TCPA;

67. An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

68. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**DEANNA HICKS**, individually and on behalf of classes of similarly situated individuals

Dated: December 20, 2017   By: ___/s/ Ted Lewis Johnson_____
One of Plaintiff's Attorneys

Ted Lewis Johnson
PO Box 5272
Greensboro, NC 27435

16

Case 5:17-cv-00629-FL   Document 1   Filed 12/20/17   Page 16 of 17

tedlewisjohnson@tedlewisjohnson.com
Phone: (336) 252-8596

Stefan Coleman*
Law@StefanColeman.com
201 S. Biscayne Blvd, 28th Floor
Miami, Fl 33131
Phone: (877) 333-9427
Fax: (888) 498-8946

*Attorneys for Plaintiff and the putative Classes*

*\*Pro Hac Vice to be sought*