IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-CV-629-FL

| | |
|---|---|
| DEANNA HICKS, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | ORDER |
| HOUSTON BAPTIST UNIVERSITY, a Delaware Corporation, ) ) ) ) | |
| Defendant. ) | |

This matter is before the court on defendant's motion to dismiss for lack of personal jurisdiction, judgment on the pleadings, and motion to strike (DE 26). Plaintiff responded in opposition to the motion and defendant replied. In this posture, the issues raised are ripe for ruling. For the following reasons, defendant's motion to dismiss and motion to strike are denied, and defendant's motion for judgment on the pleadings is denied as moot.

**STATEMENT OF THE CASE**

Plaintiff commenced this action on December 20, 2017, alleging defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Specifically, plaintiff alleges under two different provisions of the TCPA that defendant made unwanted solicitation telephone calls to plaintiff and other members of the "autodialed no consent class" members' cellular telephones without their prior express consent using an autodialer. Id. § 227(b), (c). Plaintiff asserts these claims on behalf of herself and putative class members similarly situated to her.

Plaintiff seeks an order certifying the classes defined above, and an award of actual monetary

loss or $500 in damages, whichever is greater, for each violation of the TCPA. Plaintiff asks that this money be paid into a common fund for the benefit of plaintiff and class members. Plaintiff also seeks a declaratory and injunctive relief finding defendant violated the TCPA, prohibiting the use of autodialed calling, and requiring defendant to obtain written consent to autodialed calls. Plaintiff also seeks attorneys fees and costs to be payed out of the common fund above.

After being granted an extension of time, defendant filed its answer on February 22, 2018. Defendant's original answer states "[d]efendant denies that the court has personal jurisdiction over the defendant and denies any remaining allegations contained in paragraph 9." (Answer ¶ 9). Defendant filed an amended answer on April 22, 2018 with the same denial, (Am. Answer ¶ 9), along with a paragraph under affirmative defenses raising an argument that the court lacks personal jurisdiction. (Am. Answer (DE 12) at 7 ¶ 3).

In the meantime, the court entered its case management order on March 30, 2018. The instant motions followed wherein defendant contends that the court does not have personal jurisdiction over defendant, and that plaintiff's complaint is deficient as to one of the causes of action asserted. Defendant relies upon Texas Secretary of State filing as to Houston Baptist University's corporate status ("Secretary of State Record" (DE 25-1), and student administrative records from Austin Community College ("Student Records" (DE 25-2)). On June 20, 2018 the court stayed the case pending resolution of the instant motions.

Following the court's order, plaintiff filed her response in opposition to the instant motions. Plaintiff argues that defendant waived its ability to assert personal jurisdiction, and that the court has personal jurisdiction over defendant both individually and as to the class for which she intends to seek certification. Plaintiff also argues that if the court finds personal jurisdiction is lacking, jurisdictional discovery should be permitted or the case should be transferred. In support of her

arguments, plaintiff relies upon the Coleman Declaration (DE 36-1), which includes records from Austin Community College ("Exhibit A" (pp. 5 - 88, DE 36-1)); Houston Community College ("Exhibit B"(pp.88 - 112, DE 36-1)) ), McLennan Community College ("Exhibit C" (pp. 113 - 149, DE 36-1))), Navarro College ("Exhibit D" (pp. 150 - 164, DE 36-1));  North Central Texas College ("Exhibit E" (pp. 165 - 188, DE 36-1));  South Plains College ("Exhibit F" (pp. 189 - 207, DE 36-1));  Texarkana College ("Exhibit G" (pp. 208 - 231, DE 36-1));  and Victoria College ("Exhibit H" (pp. 232 - 260, DE 36-1)); together with  results for Deanna Hicks from the Texas Board of Nursing's license verification system ("Exhibit I" (pp. 261 - 263, DE 36-1)), and an email from defendant's counsel regarding request for leave to amend its answer ("Exhibit J" (pp. 264 - 266, DE 36-1)).  Plaintiff also submits two screenshots of information defendant knew at the time it called plaintiff in North Carolina at her cellular telephone number from Sextant Marketing (DE 34-1) and Meteor Learning (DE 34-2).[1]

## STATEMENT OF FACTS

The facts alleged in the complaint may be summarized as follows.  Plaintiff resides in Youngsville, North Carolina.  (Compl. ¶ 7).  Defendant is an incorporated, private university with its principal place of business in Texas.  (Id. ¶ 8, 10).  Plaintiff asserts that defendant "conducts a significant amount of business in this district, solicits customers in this district, made and continues to make unwanted autodialed solicitation calls in this district, and because the wrongful conduct emanated from this district."  (Id. ¶ 9).  Defendant contacts consumers to solicit them to sign up for college classes using an Automated Telephone Dialing System ("ATDS").  (Id. ¶ 10).  Defendant failed to obtain any prior express written consent to make these autodialed solicitation calls to

---

[1] The court notes plaintiff has also filed a case against Meteor Learning for TCPA violations.  See Hicks v. Meteor Learning, Inc., 1:18-cv-11325-LTS (D. Mass. June 26, 2018).

3

cellular phone numbers. (Id. ¶ 11). Defendant made and continues to make autodialed solicitation calls to cellular telephones without prior express written consent of all call recipients. (Id. ¶ 19).

On August 11, 2006, plaintiff's cellular telephone was registered on the National Do Not Call Registry. (Id. ¶ 20). Plaintiff became a registered nurse after studying at Austin Community College. (Id. ¶ 21). On September 13, 2017 and September 14, 2017, plaintiff received calls telemarketer "calling on behalf of [defendant]" to advertise their course offerings to plaintiff. (Id. ¶¶ 23, 24, 26). During the September 14, 2017 call, plaintiff demanded defendant stop calling her. (Id. ¶ 27). Defendant allegedly owns, operates, or utilizes the phone number from which the call was received. (Id. ¶ 28).

Plaintiff seeks certification of two classes: an "autodialed no consent class," and a "do not call registry class." (Id. ¶ 33). Plaintiff seeks to define the "autodialed no consent class" as:

> All persons in the United States from four years prior to the filing of this action through the present who (1) Defendant (or a third person acting on behalf of Defendant) called, (2) on the person's cellular telephone, (3) using an autodialer, and (4) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff.

Id. Plaintiff seeks to define the "do not call registry class" as:

> All persons in the United States who (1) Defendant (or a third person acting on behalf of Defendant) called more than one time on his/her cellular telephone; (2) within any 12-month period (3) where the cellular telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiff.

Id. Plaintiff seeks to exclude several groups from each of these classes, (id. ¶ 34), but otherwise alleges the classes would be comprised of thousands of members with the common issues concerning whether defendant's conduct violated the TCPA. (See id. ¶¶ 35-38).

Additional facts pertinent to the instant motions will be discussed below.

## COURT'S DISCUSSION

A.  Standard of Review

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of a claim for lack of personal jurisdiction. "When a district court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014). At this stage, the court "must construe all relevant pleading allegations in the light most favorable to plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir.1989); see Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir.1993) ( "[T]he district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor.").

B.  Analysis

    1.  Waiver

The parties dispute whether or not defendant waived its ability to assert a challenge for lack of personal jurisdiction. "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defense[] by motion ... (2) lack of personal jurisdiction." Fed. R. Civ. P. 12(b). "A party waives any defense listed in Rule 12(b)(2)-(5) by ... failing to either: (i) make it by motion under this rule; or (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course." Fed. R. Civ. P. 12(h)(1). "Rule 12(h) contemplates an implied waiver of a personal jurisdiction defense by defendants who appear before a court to deny the allegations of a complaint, but who fail to make

personal jurisdiction objections at the time of their appearance." Foster v. Arletty 3 Sarl, 278 F.3d 409, 414 (4th Cir. 2002); Porsche Cars N. Am., Inc. v. Porsche.net, 302 F.3d 248, 256 (4th Cir. 2002).

Here, the defendant timely raised an objection to personal jurisdiction in its first responsive pleading, its original answer. Defendant's first pleading states "[d]efendant denies that the court has personal jurisdiction over the defendant and denies any remaining allegations contained in paragraph 9." (Answer ¶ 9). Though not the clearest manner of pleading,[2] the court is satisfied that defendant's denial is sufficient to "assert" the defense of personal jurisdiction under the Federal Rules. Fed. R. Civ. P. 12(b). This is consistent with the admonishments in the Federal Rules that, with respect to pleadings, "[n]o technical form is required" and "[p]leadings must be construed so as to do justice." See Fed. R. Civ. P. 8(d)(1), (e). Therefore defendant has not waived its personal jurisdiction argument by filing its answer, and properly preserved the objection before filing its amended answer and 12(b)(2) motion.

Plaintiff argues that defendant's motion is untimely. For the reasons stated above, defendant properly preserved its personal jurisdiction defense by asserting it in its original answer, and again in its amended answer. Therefore, plaintiff's argument that defendant waived its personal jurisdiction defense is without merit.

2. Personal Jurisdiction as to Plaintiff

In this case, the parties dispute whether or not this court has personal jurisdiction over defendant. "A lawful assertion of personal jurisdiction over a defendant requires satisfying the

---

[2]Defendant added another statement, in its amended answer, in the "defenses" section also arguing the court lacked personal jurisdiction in its amended answer. (Am. Answer at 7 ¶ 3).

standards of the forum state's long-arm statute and respecting the safeguards enshrined in the Fourteenth Amendment's Due Process Clause." Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 301 (4th Cir. 2012). Where, as here, "North Carolina's long-arm statute is construed to extend jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause, . . . the dual jurisdictional requirements collapse into a single inquiry" into whether personal jurisdiction comports with due process. Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001).

The due process inquiry "can be undertaken through two different approaches – by finding specific jurisdiction based on conduct connected to the suit or by finding general jurisdiction" based on "continuous and systematic" activities. ALS Scan, Inc. v. Digital Serv. Consul., Inc., 293 F.3d 707, 711 (4th Cir. 2002). Here, plaintiff asserts specific jurisdiction. (See Compl. ¶ 9) (discussing defendant's contacts with the forum).[3]

"To decide whether specific jurisdiction exists, we examine (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004) (quotations omitted); see Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76 (1985). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." Walden v. Fiore, 571 U.S. 277, 283-84 (2014) (quotations omitted). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create

---

[3] The court notes general personal jurisdiction does not lie in this case because defendant's contacts are not so continuous and systematic as to render it "at home" in North Carolina. See Daimler AG v. Bauman, 571 U.S. 117, 127 (2014).

7

a substantial connection with the forum State." Id. at 284. Even a single contact may be sufficient to create jurisdiction when the cause of action arises out of that single contact, provided that the principle of "fair play and substantial justice" is not thereby offended. Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 397 (4th Cir. 2003).

Defendant has minimum contacts sufficient to show that it "purposefully availed itself of the privilege of conducting activities in the State." Mitrano, 377 F.3d at 407. Plaintiff's complaint alleges that she resides in North Carolina, and that she received two phone calls from defendant's agent. (Compl. ¶¶ 7, 23-26). Although plaintiff does not specifically allege in her complaint that she received the phone calls in the State of North Carolina, the court draws a reasonable inference in favor of plaintiff that she received these phone calls in or around the location where she resides. See Combs, 886 F.2d at 676.

Moreover, the contacts are related to the dispute at issue. Plaintiff is suing for violations of the TCPA, and she was called by defendant over the telephone while she was a resident of North Carolina. (Compl. ¶¶ 23-26). Finally, exercise of personal jurisdiction is constitutionally reasonable. Defendant has not shown that litigating this case in this court would constitute an undue hardship to it, and plaintiff's choice of forum should be given some weight in determining whether the choice of forum is fair. See Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 317 (1945). Therefore, the court has specific personal jurisdiction over defendant.

Defendant argues that it did not purposefully avail itself of the privilege of doing business in North Carolina for several reasons, including 1) Austin Community College's records listed plaintiff's address as being in Austin, Texas (Student Records (DE 25-2) at 2), and 2) the area code for plaintiff's cell phone is "512," which defendant asserts is a Texas area code and listed as

plaintiff's "home phone."  (Student Records (DE 25-2) at 2).  Defendant argues that, as a consequence, it could not be found to purposefully avail itself of the protections of North Carolina law because it did not intentionally make phone calls to plaintiff in North Carolina.

However, the court finds defendant's arguments unpersuasive.  Defendants collected contact information of individuals who possessed addresses and telephone numbers in a variety of states beyond just Texas.[4]  (E.g., Coleman Declaration (DE 36-1) at 208-231).  A review of the records obtained by defendant shows two contacts had residential addresses in North Carolina.  (Coleman Declaration (DE 36-1) at 229, 244).  Additionally, five contacts had phone numbers with area codes 336, 704, and 910, all of which are area codes serving North Carolina.[5]  (Coleman Declaration (DE 36-1) at 108, 125, 156, 188, 198).  In light of the fact that defendant collected the contact information of individuals who either resided in North Carolina or possessed North Carolina phone numbers, the court rejects the insinuation of defendant that if it had known plaintiff was residing in North Carolina, it would not have had its agent make the September 13 or September 14 phone calls to her.  See Mylan Labs, 2 F.3d at 60 ( "[T]he district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor."); (see also Compl. ¶¶ 23-26).  Therefore, defendant's contacts with North Carolina show that defendant purposefully availed itself of the privilege of conducting activity in the state.

Consequently, the court denies defendant's motion to dismiss for lack of personal jurisdiction

---

[4] Plaintiff asserts that calls from defendant to former Austin Community College students alone include repeated calls to 27 different states not including Texas.  (DE 32 at 6-7).

[5] "The North American Numbering Plan Administration ("NANPA") holds overall responsibility for the neutral administration of North American Numbering Plan ("NANP") numbering resources, subject to directives from regulatory authorities in the countries that share the NANP."  About NANPA, (last visited November 6, 2018), https://www.nationalnanpa.com/about_us/index html [https://perma.cc/F24F-Q9MR].  The court takes judicial notice of the fact that the 336, 704, and 910 area codes cover North Carolina.  See, e.g., Area Codes Map NC – North Carolina, (last visited November 6, 2018), https://www.nationalnanpa.com/area_code_maps/display html?nc [https://perma.cc/L3JD-P6HM].

as to plaintiff.

        3.      Personal Jurisdiction as to Plaintiff's Proposed Classes

Defendant also moves to strike plaintiff's proposed classes, arguing that the court lacks personal jurisdiction over the claims of non-North Carolina class members.

"The class-action device was designed as an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 155 (1982) (internal quotations omitted). "[N]onnamed class members ... may be parties for some purposes and not for others." Devlin v. Scardelletti, 536 U.S. 1, 2 (2002). "An unnamed member of a proposed but uncertified class is not a party to the litigation." Quicken Loans Inc. v. Alig, 737 F.3d 960, 966 (4th Cir. 2013) (citing Smith v. Bayer Corp., 131 S.Ct. 2368, 2379 (2011)). A court has specific jurisdiction over defendant where "the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" Daimler AG v. Bauman, 571 U.S. 117, 127 (2014).

As discussed above, the court has found that it has personal jurisdiction over defendant in this suit brought by plaintiff. The proposed, unnamed class members in plaintiff's complaint are not parties to this litigation, and thus not a part of "the suit." See id. Therefore, the court should not consider them in determining whether it has jurisdiction over defendant in this case. See Quicken Loans Inc. v. Alig, 737 F.3d at 966. If plaintiff satisfies the requirements of the Federal Rules, then the court may certify a class action and issue a judgment pertaining to non-named parties. Fed. R. Civ. P. 23.

Defendant argues that Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., 137 S. Ct. 1773 (2017) precludes class actions where the class would extend outside the forum state and plaintiff is relying solely on specific personal jurisdiction. In Bristol-Myers Squibb, the Court considered whether named, nonresident plaintiffs filing eight separate complaints

10

in a mass tort action could assert specific personal jurisdiction. 137 S. Ct. at 1778. There, applying "settled principles of personal jurisdiction," the Court dismissed non-resident plaintiffs' claims because their claims were not related to defendant's contacts with the forum. Id. at 1781, 1783.

Although the applicability of Bristol-Myers Squibb to class actions remains a subject of debate among the courts, the distinctions between class action lawsuits and mass tort lawsuits cannot be overlooked in determining personal jurisdiction over a defendant. In federal court, the class action lawsuit is a procedural device with its own due process safeguards that apply after the named plaintiff to the action has met his or her burden of establishing personal jurisdiction in the suit. See Fed. R. Civ. P. 23; Gen. Tel. Co. of Sw., 457 U.S. at 155. The Court in Bristol-Myers Squibb expressly declined to decide "whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court" as a state court, indicating that the court's ruling does not necessarily apply to nationwide class action lawsuits. See 137 S. Ct. at 1784 (citing Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 102, n. 5 (1987)).

There are other compelling reasons to conclude that the Court's holding does not extend to such class actions. Although the Fourth Circuit has not opined on the issue, district courts have recognized that, in mass tort actions like Bristol-Myers Squibb, "each plaintiff is a real party in interest to the complaints; by contrast, in a putative class action, one or more plaintiffs seek to represent the rest of the similarly situated plaintiffs, and the 'named plaintiffs' are the only plaintiffs actually named in the complaint.'" Molock v. Whole Foods Mkt., Inc., 297 F. Supp. 3d 114, 126 (D.D.C. 2018) (denying motion to dismiss as to out of state class members on this ground); see Devlin, 536 U.S. at 2. The court joins the majority of other courts in concluding that personal jurisdiction must be analyzed at the level of the suit, and in a class action, "unlike Bristol-Myers Squibb, there is only one suit: the suit between Plaintiff and Defendant." See, e.g., Morgan v. U.S.

Xpress, Inc., No. 3:17-CV-00085, 2018 WL 3580775, at *5 (W.D. Va. July 25, 2018). "While Plaintiff may end up representing other class members, this is different than a mass action where independent suits with independent parties in interest are joined for trial." Id.

The Federal Rules of Civil Procedure themselves also highlight key differences between a class action lawsuit where one plaintiff represents multiple unnamed plaintiffs and mass tort actions brought by many different plaintiffs who are parties in interest. Each of the factors required by the Rule 23 for a class action shows a potentially distinguishes a mass tort action from a class action, including 1) parties so numerous that joinder is impracticable, 2) common questions of law or fact, 3) typicality of claims of the class, 4) adequate representation by the plaintiff, are not necessarily required for a mass tort action to proceed, 5) predominance of class issues over individual issues, and 6) the superiority of a class action in resolving the issues. Fed. R. Civ. P. 23. Where these factors are met, plaintiff is allowed to represent individuals not party to the action, subject to additional due process considerations. See Gen. Tel. Co. of Sw., 457 U.S. at 155. Although defendant points to other lower court decisions noting that the Rules Enabling Act prohibits modification of substantive rights, the Court in Bristol-Myers Squibb notes that it is "the suit" that must "aris[e] out of or relat[e] to the defendants contacts with the forum." Bristol-Myers Squibb, 137 S. Ct. at 1780. Analyzed at the level of the suit, Rule 23 does not modify the substantive rights of defendant, who is already subject to the specific personal jurisdiction of the court due to its dispute with plaintiff.

For the reasons stated above, the court holds Bristol-Myers Squibb does not apply in the instant case. Since plaintiff has made a showing of personal jurisdiction as discussed above, plaintiff has established personal jurisdiction for a putative class claim as well. Therefore, the court denies defendants' motion to strike plaintiff's class action claims.

4.  Motion for Judgment on the Pleadings

Defendant challenges plaintiff's second cause of action asserted in her complaint, arguing that it is a tax-exempt nonprofit, and therefore not subject to the provisions of the TCPA asserted by plaintiff under Count II. See 47 U.S.C. § 227(a)(4), (c); 47 C.F.R. § 64.1200(c), (f)(14). Plaintiff concedes that defendant is not subject to the laws alleged in Count II of her complaint, and dismisses her second cause of action. (DE 21 at 2 n. 1) ("Plaintiff hereby dismisses her second cause of action against [defendant] ...."). Plaintiff's second cause of action is dismissed, and accordingly defendant's motion for judgment on the pleadings is denied as moot.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss for lack of personal jurisdiction (DE 26) is DENIED. Defendant's motion to strike plaintiff's putative class claims (DE 26) is DENIED. Defendant's motion for judgment on the pleadings (DE 26) is DENIED AS MOOT. Having disposed of the instant motion, the court hereby LIFTS the stay on this case.

SO ORDERED, this the 3rd day of January, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge