IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:17-cv-00629-FL

| | |
|---|---|
| DEANNA HICKS, | ) |
| ON BEHALF OF HERSELF AND | ) |
| ALL OTHERS SIMILARLY SITUATED, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| v. | ) |
| | ) |
| HOUSTON BAPTIST UNIVERSITY, | ) |
| | ) |
| DEFENDANT. | ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT,
SERVICE AWARD, AND CLASS COUNSEL FEES AND COSTS**

# I.     INTRODUCTION

Plaintiff DeAnna Hicks ("Plaintiff") and Defendant Houston Baptist University ("HBU") achieved a Class Action Settlement Agreement and Release in this proposed class action brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (the "Agreement" or "Settlement"). The Agreement,[1] which is subject to this Court's approval, requires HBU to make available $375,000 for the benefit of Plaintiff and proposed class members. All class members who submit a simple claim form will receive a cash payment of $50, which exceeds the typical value of claims in such settlements. The settlement fund also will be used to pay the service award approved by the Court, if any, and the attorneys' fees and costs awarded to Class Counsel by the Court, if any.

The parties reached the Settlement after three years of contentious litigation, which included significant written fact discovery, third party discovery, which included a major public records request campaign, disclosure of multiple experts, and nine depositions. Moreover, prior to settlement the parties briefed and the Court ruled on a protracted discovery dispute and a dispositive motion, and briefing on class certification was nearly complete. *See* Declaration of Avi Kaufman, attached as Exhibit 1, at ¶ 2.

In addition, to discuss settlement, the parties engaged in two full-day mediation sessions, the second with the able assistance of Hon. Morton Denlow (Ret.) of JAMS. *Id*. By the time the parties finalized an agreement, they were well aware of the strengths and weaknesses of their respective positions and of the risks associated with pursuing the case through trial, especially in light of the changing legal landscape of the Telephone Consumer Protection Act and the

---

[1] The Agreement is filed at ECF No. 94-1. Capitalized terms used herein, unless otherwise defined, have the same definitions as those terms in the Agreement.

financial condition of HBU and HBU's indemnitor Meteor Learning, particularly as a result of the Covid-19 pandemic. *Id.*

The Settlement Agreement is now subject to final approval by this Court. The parties have fulfilled all their obligations under the preliminary approval order, and notice has been issued. *No objections* have been filed by any Settlement Class Member or any government entity that was provided notice of the settlement as required by the Class Action Fairness Act.

The settlement is, in all respects, fair, adequate, and reasonable, and the per-claimant award compares favorably with TCPA settlements approved across the country. Accordingly, Plaintiff requests that the Court grant final approval of the Settlement Agreement; find that the class notice program satisfies due process and Rule 23; find the Settlement Agreement to be fair, reasonable, and adequate to the Class; dismiss the claims against Defendant with prejudice, retaining jurisdiction of matters only relating to enforcement of the Settlement Agreement; and grant a service award to Plaintiff and Class Counsel fees and costs.

## II.    PROCEDURAL BACKGROUND

Ms. Hicks alleges that Defendant Houston Baptist University ("HBU") and its vendors obtained her cellular telephone number and the cellular telephone numbers of approximately 4,800 other people in the exact same way (through public records requests made under the Family Educational Rights & Privacy Act, 20 U.S.C. § 1232g), to recruit them for an HBU degree program, using the exact same dialing system (the Five9 Virtual Call Center), in violation of the TCPA's prohibition against autodialed calls.

The parties reached the Settlement after three years of contentious litigation, which included significant fact and expert discovery, including a major public records request campaign, and nine depositions, and after briefing numerous substantive motions, including a

significant discovery dispute, a dispositive motion, and Plaintiff's motion for class certification. See Kaufman Decl. at ¶ 2.

The parties engaged in a second full-day mediation session on October 26, 2020 with the able assistance of Hon. Morton Denlow (Ret.) of JAMS. While the parties were not able to settle during mediation, the parties continued settlement negotiations with the mediator's assistance and reached a settlement in principle shortly after the mediation.

Plaintiff believes that the claims asserted in the Action have merit. Kaufman Decl. at ¶ 3. Nonetheless, Plaintiff and Class Counsel recognize and acknowledge the expense, time, and risk associated with continued prosecution of the Action through class certification, trial, and any subsequent appeals. *Id*. Plaintiff's counsel has taken into account the strength of Defendant's defenses, difficulties in obtaining class certification and proving liability, the uncertain outcome and risk of the litigation, especially in complex actions such as this one, the inherent delays in such litigation, and, in particular, the risk that a change in the law, including a ruling by this Court concerning the constitutionality of the TCPA, a the recent ruling by the Supreme Court concerning what constitutes an autodialer under the TCPA, or a ruling by the FCC regarding what constitutes an autodialer under the TCPA, could nullify Plaintiff's claims. *Id*.; *see Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (Apr. 1, 2021); *Creasy v. Charter Communs., Inc.*, 2020 U.S. Dist. LEXIS 177798 (E.D. La. Sep. 28, 2020) (finding that TCPA claims based on calls preceding the Supreme Court's ruling in *Barr v. Am. Assn. of Political Consultants, Inc.*, 591 U.S. ___, (July 6, 2020), are not actionable because the TCPA was unconstitutional until a 2015 amendment was severed in *Barr*).

Plaintiff's counsel believes that the proposed Settlement confers substantial and immediate benefits upon the Settlement Class whereas continued and protracted litigation, even

if successful, may have ultimately delivered none. Kaufman Decl. at ¶ 4. Therefore, Plaintiff and Class Counsel believe that it is desirable that the Released Claims be fully and finally compromised, settled, dismissed with prejudice, and barred pursuant to the terms set forth herein. *Id*. Based on their evaluation, Plaintiff and Class Counsel have concluded that the terms and conditions of this Agreement are fair, reasonable, and adequate for the Settlement Class, and that it is in the best interests of the Settlement Class to settle the Released Claims pursuant to the terms and provisions of this Agreement. *Id.*

## III.    THE PROPOSED SETTLEMENT

### A.    The Settlement Class

The proposed Settlement Class includes: All regular users or subscribers of numbers assigned to a paging service, cellular telephone service, specialized mobile radio service, radio common carrier service, or any service for which the called party is charged for the call that, between December 20, 2013 and the date of Preliminary Approval, (a) were called to solicit to enroll in an HBU degree program; (b) using the Five9 Virtual Call Center system; (c) whose telephone number was obtained through a public records request under FERPA; and (e) who did not enroll in or apply for an HBU degree program. Agreement at § III.

### B.    Settlement Relief

The Settlement provides meaningful monetary relief.  Pursuant to the Agreement, HBU agrees to make available a Settlement Fund of $375,000.  The Settlement Fund shall be used to pay all Approved Claim Payments and all Settlement Costs. Agreement at § IV.

### C.    Service Award and Class Counsel Fees and Expenses

Pursuant to the Agreement, Class Counsel will ask the Court to approve a service award to the Class Representative in an amount not to exceed $5,000.  The service award shall be paid

to the Class Representative in addition to any Approved Claim Payment owed to the Class Representative. The Parties agree that the Court's failure to approve, in whole or in part, a service award shall not prevent the Settlement from becoming effective, nor shall it be grounds for termination. Agreement at ¶ 68.

Class Counsel will also request that the Court approve an award of attorneys' fees and reimbursement of documented costs and expenses in an amount not to exceed one third of the Settlement Fund, or $125,000. The Parties agree that the Court's failure to approve, in whole or in part, any award of attorneys' fees and expenses shall not prevent the Settlement from becoming effective, nor shall it be grounds for termination. Agreement at ¶ 67.

### D. Notice Program

Rule 23(c)(2) requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The Settlement provided for direct mailed notice. The settlement administrator has completed all notice obligations to date and is continuing to administrate the notice and claims process.[2] As of April 14, 2021, direct mailed notice was delivered to 4,306 of the 4,749 Settlement Class Members for whom a mailing address was available – a deliverable rate of 90.7% for identifiable Settlement Class Members. Kaufman Decl. ¶ 5. Overall, individual notice reached approximately 89.7% of the 4,800 Settlement Class Members. *Id*. Such a percentage far

---

[2] A declaration from the settlement administrator will be filed after the claims deadline, in advance of the final fairness hearing.

exceeds established due process requirements for class notice. *See* Federal Judicial Center,

Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010),

*available at* https://goo.gl/KTo1gB (instructing that notice should have an effective "reach" to its

target audience of 70-95%. ); *see also Swift v. Direct Buy, Inc.*, No. 2:11-cv-401-TLS, 2013 WL

5770633, at *3 (N.D. Ind. Oct. 24, 2013) ("The Federal Judicial Center's checklist on class

notice instructs that class notice should strive to reach between 70% and 95% of the class.").

All in all, the Notice Program constitutes the best notice practicable under the

circumstances, provides sufficient notice to the Settlement Class, and fully satisfies the

requirements of due process and Rule 23. Kaufman Decl. ¶ 5.

**E.      Claims**

Each Settlement Class Member who timely files with the Settlement Administrator a

Claim Form that is determined by the Settlement Administrator to be an Approved Claim

pursuant to the provisions of the Agreement shall receive a cash payment of $50. As of April 14,

2021, KCC has received 38 Claims, no objections, and no opt-outs. Kaufman Decl. ¶ 6. The

current claims rate is anticipated to increase as the claims period is still open.  KCC likely will

continue to receive and process timely and late claim forms received after the May 3, 2021

deadline (it is common to receive timely postmarked claims upwards of 10 business days after a

claims filing deadline, especially this year with the USPS mail handling and delivery delays).  As

a result, the claim statistics are not final and are subject to further updates.

"The question for the Court at the Final Fairness Hearing stage is whether the settlement

provided to the class is 'fair, reasonable, and adequate,' not whether the class decides to actually

take advantage of the opportunity provided." *Braynen v. Nationstar Mortg., LLC*, 2015 U.S.

Dist. LEXIS 151744, at *48-50 (S.D. Fla. Nov. 9, 2015) ("The question for the Court at the Final

Fairness Hearing stage is whether the settlement provided to the class is 'fair, reasonable, and adequate,' not whether the class decides to actually take advantage of the opportunity provided.") (internal citations omitted); *Poertner v. Gillette Co.*, 618 F. App'x 624, 626 (11th Cir. 2015) (affirming final approval of settlement with less than 1% claims rate).

## F.    Release

The Release is narrowly tailored under the Agreement to claims under the TCPA arising from the calls to the Settlement Class. Agreement at ¶ 29.

## IV.    THE SETTLEMENT MERITS FINAL APPROVAL

### A.  The Settlement Is Fair, Reasonable And Adequate

The settlement of a class action requires approval by a district court. Fed. R. Civ. P. 23(e); *Scardelletti v. Debarr*, 43 F. App'x. 525, 528 (4th Cir. 2002); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). A court may do so only after a hearing and on finding that the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(C). "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement." *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158. Such approval typically involves a two-step process of "preliminary" and "final" approval. *See Manual for Complex Litigation* § 21.632, at 414 (4th ed. 2004); *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1992).

Preliminary approval of the Settlement Agreement has already been granted. At this final approval stage, the Fourth Circuit has adopted a bifurcated analysis involving inquiries into the fairness and adequacy of the settlement. *Scardelletti*, 43 F. App'x. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158.

A class settlement is fair when it is "reached as a result of good faith bargaining at arm's length, without collusion." *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159. The Court should be

7

satisfied that "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Smith v. Res-Care, Inc*., CV 3:13-5211, 2015 WL 461529, at *3 (S.D. W. Va. Feb. 3, 2015) (citing Manual for Complex Litigation, § 30.44 (1985)). "Absent evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion." *Kirven v. Central States Health & Life Co. of Omaha*, No. 3:11-2149-MBS, 2015 WL 1314086, at *5 (D.S.C. Mar. 23, 2015); *Geissler v. Stirling*, No. 4:17-cv-01746-MBS, 2019 U.S. Dist. LEXIS 131110, at *14-15 (D.S.C. Aug. 5, 2019).

In evaluating the fairness of a proposed settlement, the Court should consider these factors: (1) the posture of the case at the time the settlement is proposed; (2) the extent of discovery conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the relevant area of class action litigation. *Scardelletti*, 43 F. App'x. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159. "A proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arm's length negotiations." *Geissler*, 2019 U.S. Dist. LEXIS 131110, at *9 (internal citation omitted).

In determining adequacy, the relevant considerations include: (1) the relative strength of the plaintiff's case on the merits; (2) the existence of any difficulties of proof or strong defenses plaintiff is likely to encounter if the case proceeds to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant and likelihood of recovery of a

8

litigated judgment; and (5) the degree of opposition to the settlement. *Scardelletti*, 43 F. App'x. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159.

All of these factors weigh strongly in favor of final approval.

### 1. The Posture of the Case and the Discovery Conducted By The Time Of Settlement Support Approval

"This factor requires the court to determine whether the case was well-enough developed for the parties to appreciate the full landscape of their case." *Kirven,* 2015 U.S. Dist. LEXIS 36393, at *11-12 (internal citation omitted). Here, the parties reached a settlement after three years of contentious litigation, including the completion of fact discovery and substantive motion practice, including class certification briefing. Kaufman Decl. ¶ 2. HBU, Meteor Learning, and the third parties subpoenaed in discovery produced thousands of pages of documents, including leads lists, call logs, dialer manuals and specifications, and financial documents. *Id.* Plaintiff and HBU also took numerous depositions, including, among others, those of the parties, Meteor Learning, Plaintiff's experts, and the marketer who managed the calling campaign. *Id.* Class Counsel conducted a thorough investigation and analysis of Plaintiff's claims and engaged in extensive formal discovery with Defendant and numerous third parties.

Class Counsel's review of that discovery and attendant issues enabled them to gain an understanding of the evidence related to central questions in the action and prepared them for well-informed settlement negotiations based on a thorough analysis of the issues. As a result, both the parties and the Court have sufficient information to appraise the significant risks in continued litigation, including but not limited to class certification prospects and the likelihood of establishing that the calls were made using an automatic telephone dialing system, and the fairness of settlement terms. That knowledge base, coupled with the parties' respective assessments of the relative strengths and weaknesses of their legal positions, all weigh in favor of

9

granting final approval, because they ensure that the parties and the Court are able to fairly evaluate the case.

### 2. The Negotiation Process Was At All Times Arm's Length And Was Overseen By An Experienced Mediator

"Absent evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion." *Kirven*, 2015 WL 1314086, at *5; *Geissler,* 2019 U.S. Dist. LEXIS 131110, at *14-15. Here, the circumstances surrounding the negotiation of the settlement demonstrate, even without a presumption, that the negotiations were wholly in good faith and without any suggestion of collusion. The Settlement here is the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this action. Kaufman Decl. ¶ 4. Furthermore, Class Counsel are particularly experienced in the litigation, certification, and settlement of nationwide TCPA class action cases. Kaufman Decl. ¶ 8; Declaration of Stefan Coleman, attached hereto as Exhibit 2, ¶ 2.

The parties reached agreement only after two full day mediations, the second with the assistance of Hon. Morton Denlow (Ret.), a JAMS mediator. Kaufman Decl. ¶ 2. At all times the negotiations were at arms' length and free from collusion. *Id.* ¶ 4. Plaintiff's counsel steadfastly advocated for substantial settlement relief. Plaintiff and Plaintiff's counsel also were well aware of the risks they faced if they continued to litigate, particularly the risks inherent in class certification and the changing legal landscape concerning the TCPA, including interpretation of what constitutes an automatic telephone dialing system under the TCPA and the constitutionality of the autodialer provision at the time of the calls to the Settlement Class. *Id.* ¶ 3. Plaintiff relied on the judgment of her counsel, who have extensive experience litigating, settling, and trying TCPA and other class actions. In such circumstances, it may be presumed that a settlement is

fair. *See Good v. W. Va.-Am. Water Co.*, No. 14-1374, 2017 WL 2884535 (S.D. W. Va. July 6, 2017) (finding "no evidence of chicanery" in the circumstances surrounding the settlement and noting counsel's "abundance of experience" and the advanced stage of the litigation).

### 3. Class Counsel Are Experienced TCPA Litigators

"The inquiry into the adequacy of legal counsel focuses on whether counsel is competent, dedicated, qualified, and experienced enough to conduct the litigation and whether there is an assurance of vigorous prosecution." *Kirven*, 2015 U.S. Dist. LEXIS 36393, at *13.

Here, the settlement agreement is the result of extensive negotiations between seasoned defense counsel and experienced class action attorneys who are skilled and experienced in litigating and resolving class actions in general, and in TCPA class actions in particular, and are extremely familiar with all of the factual and legal issues of this case. Specifically, Class Counsel focus their practices on litigating consumer class action claims and have particularly broad experience in the litigation of TCPA class actions. Kaufman Decl. ¶ 7. Given the breadth of their experience, *see generally* Class Counsel declarations attached hereto, their opinion should weigh strongly in favor of approval of the Settlement.

### 4. The Relative Strength Of The Plaintiff's Case On The Merits And The Existence Of Any Difficulties Of Proof Or Strong Defenses The Plaintiff Is Likely To Encounter If The Case Goes To Trial

While Plaintiff and the Class believe they would prevail on class certification and at trial, Defendant strongly argued otherwise. The risk of no recovery here—and in complex cases of this type more generally—is real.

While this case was pending, the Supreme Court assessed the constitutionality of the TCPA in *Barr v. Am. Ass'n of Political Consultants (AAPC),* 140 S. Ct. 2335, 207 L. Ed. 2d 784 (2020) (July 6, 2020). At issue in that case was a 2015 congressional amendment to the TCPA's general robocall restriction to permit robocalls made to collect debts owed to or guaranteed by

11

the federal government. In *Barr*, the Supreme Court struck that down as an unconstitutional content-based restriction on speech and severed it from the rest of the statute. *Id.* However, defendants in TCPA cases have proffered the argument that the Supreme Court's fractured decision in *Barr* amounts to an adjudication that the entirety of § 227(b)(1)(A)(iii) was unconstitutional from the moment Congress enacted the offending government-debt exception to the moment the Supreme Court severed that exception to preserve the rest of the law and that as a result any alleged TCPA violations during that time are not enforceable in federal court. Indeed, various federal district courts have adopted this interpretation. *See e.g., Creasy v. Charter Communs., Inc.,* No. 20-1199, 2020 U.S. Dist. LEXIS 177798, at *2 (E.D. La. Sep. 28, 2020). As such, the Settlement Class members risked recovering *nothing* if this Court or the Fourth Circuit sided with the Court in *Creasy*.

Another substantial risk in this case focuses on the question of whether the dialing system used by Defendant is an "Automatic Telephone Dialing System" under the TCPA. On April 1, 2021, the Supreme Court overturned the Ninth Circuit's holding in *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019), and provided instruction on what constitutes an ATDS, which may be interpreted as substantially limiting what constitutes an autodialer under the TCPA. *Facebook*, 141 S. Ct. 1163.

Class certification is also far from automatic in TCPA cases. *Compare Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 WL 4627386, at *1 (N.D. Ill. Sept. 27, 2018) (denying class certification in TCPA case after nearly five years of hard-fought discovery and litigation), *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action), and *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (same) *with Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 WL

12

6106714 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view that issues of consent would be individualized), and *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

"In evaluating a settlement, the trial court should not decide the merits, or proceed from the assumption that victory is one hundred percent assured and that all claimed damages are properly recoverable. *See In re Compact Disc Litig.*, 216 F.R.D. at 211 (the role of the court is not to 'second-guess' the settlement but to decide whether its overall terms are reasonable). As one court has observed, '[a] settlement is by nature a compromise between the maximum possible recovery and the inherent risks of litigation. The test is whether the settlement is adequate and reasonable and not whether a better settlement is conceivable.' *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 258 (D. Del. 2002) (citation omitted)." *Muhammad v. Nat'l City Mortg., Inc.*, Civil Action No. 2:07-0423, 2008 U.S. Dist. LEXIS 103534, at *13 (S.D. W. Va. Dec. 19, 2008). The risks of the litigation, including the changing TCPA landscape, and the complexity of the issues involved, weigh in favor of granting final approval to the Settlement.

### 5. The Anticipated Duration And Expense Of Additional Litigation

The complexity, expense, and duration of litigation are factors that support approval of a settlement. *In re Corp. Litig.*, 264 F.3d 201, 231, 233 (3d Cir. 2001); *Girsh v. Jepson*, 521 F.3d 153, 157 (3d Cir. 1975) (identifying complexity, expense, and duration as one of nine factors in determining the fairness of settlement). Here, major hurdles remain in this litigation, including class certification and summary judgment. Kaufman Decl. ¶ 4. The parties ultimately elected to forgo the expense of continued litigation in reaching a fair and adequate settlement that took the significant risks of further litigation into account.

13

### 6. The Solvency Of The Defendant And Likelihood Of Recovery On A Litigated Judgment

Even if Plaintiff prevailed on the merits, there would be significant challenges in collecting any judgment, especially in light of the financial condition of Meteor Learning and HBU, as supported by the financial documents provided in connection with mediation. *Id*. at ¶ 2. As one court acknowledged in approving a TCPA settlement funded by a much larger company than Defendant:

> Individual class members receive less than the maximum value of their TCPA claims, but they receive a payout without having suffered anything beyond a few unwanted calls or texts, they receive it (reasonably) quickly, and they receive it without the time, expense, and uncertainty of litigation.... *[C]omplete victory for Plaintiffs at $500 or $1,500 per class member could bankrupt [the defendant].... [The] recovery in the hand is better than a $500 or $1,500 recovery that must be chased through the bankruptcy courts.*

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) (emphasis added). The typical risks of nonpayment are accentuated in the current economic climate where the country is facing the lingering COVID-19 pandemic and the accompanying financial stress that is affecting nearly every business and individual in some form or fashion. The uncertainty created by this environment makes the certainty created the Settlement achieved by Plaintiff's Counsel even more valuable and prudent for the Class.

### 7. Other Factors: The Settlement Amount Is Significant And The Lack Of Objections Indicates The Class's Support

The Settlement provides $50 per Settlement Class Member, which exceeds the typical value of rewards in such settlements, often from much larger companies. *See, e.g., In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (granting final approval where each class member would be awarded $39.66); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358 at *10 (N.D. Cal. Aug. 29, 2014) (discussing range of acceptable TCPA settlements and approving

payment of no more than $40 per claimant); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493–94 (N.D. Ill. 2015) ($30); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, 2014 WL 1309352, at *6 (N.D. Cal. Mar. 10, 2014) (approving settlement with payments of $46.98); *Markos v. Wells Fargo Bank, N.A.*, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (approving settlement that provided a cash award of approximately $24 per claiming class member, calling the settlement an "excellent result").

The reaction of the class members to the settlement supports final approval as well. "An absence of objections and a small number of opt-outs weighs significantly in favor of a settlement's adequacy." *Kirven*, 2015 U.S. Dist. LEXIS 36393, at *14. The reaction of the class to the settlement has been positive, with *no objections and no opt outs*. Kaufman Decl. ¶ 6.

### B. The Settlement Class Should Be Certified

In granting preliminary approval, the Court provisionally certified the Settlement Class for settlement purposes. For all the same reasons contained in Plaintiff's preliminary approval memorandum (ECF No. 94), the Settlement Class meets the requirements of Rule 23, and should be certified for settlement purposes.

### V. THE REQUESTED SERVICE AWARD FOR THE CLASS REPRESENTATIVE IS REASONABLE AND SHOULD BE APPROVED

Class Counsel respectfully request a Service Award for the Class Representative in the amount of $5,000. "Incentive or service awards reward representative plaintiffs' work in support of the class, as well as their promotion of the public interest and courts around the country have allowed such awards to named plaintiffs or class representatives." *Robinson v. Carolina First Bank NA*, No. 7:18-cv-02927-JDA, 2019 U.S. Dist. LEXIS 103831, at *51 (D.S.C. June 21, 2019) (internal citation omitted) (awarding plaintiff $15,000 as "well within the range of reasonable incentive awards approved by courts").

Ms. Hicks's participation led to making $375,000 available for the benefit of the Class. Plaintiff invested her time into this litigation. *See* Kaufman Decl. ¶ 8. She took personal time to seek out and speak with Class Counsel, search for relevant evidence, review and approve the complaint for filing, respond to discovery, prepare for her deposition, be deposed, keep apprised of the progress of the litigation, participate in the settlement negotiations, and, ultimately, provide her input for the class action settlement of the case presented to the Court for approval. It is Ms. Hicks's opinion that the settlement achieves a result which is fair and reasonable for the Class which she seeks to represent. *Id.* This sacrifice was made to support a case in which she had a relatively modest personal interest, warranting the Court's approval of the requested service award. Given Plaintiff's personal contribution to the successful prosecution of this action, Plaintiff should be granted a service award in the amount of $5,000.

## VI. CLASS COUNSEL'S APPLICATION FOR FEES AND EXPENSES IS FAIR, REASONABLE, AND JUSTIFIED, AND SHOULD BE APPROVED

The Settlement permits Class Counsel to seek an award of attorneys' fees and reimbursement of documented costs and expenses in an amount not to exceed one third of the Settlement Fund, or $125,000. Given the outstanding outcome, Class Counsel request approval of $34,612.67 for documented reasonable out-of-pocket expenses and of attorneys' fees of $90,387.33, which together total $125,000 and represent one third of the Settlement Fund

Rule 23 permits a court to award "reasonable attorney's fees... that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Supreme Court has "recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *United States v. Tobias*, 935 F.2d 666, 667 (4th Cir. 1991) (explaining equitable basis of the "common fund" doctrine).

16

Although the Fourth Circuit has not required a particular method for calculating attorney's fees in common fund cases, "[w]ithin this Circuit, the percentage-of-recovery approach is not only permitted, but is the preferred approach to determine attorney's fees." *Savani v. URS Prof'l Sols. LLC*, 121 F. Supp. 3d 564, 568 (D.S.C. 2015) (citing cases).[3] The Fourth Circuit Court of Appeals has acknowledged the propriety of the holding in *Savani* when affirming a fee award and recognizing that *Savani* awarded nearly 40% of the common fund. *See Brundle v. Wilmington Tr., N.A.,* 919 F.3d 763, 788 (4th Cir. 2019) (citing *Savani* and explaining: "Had Brundle pursued class certification and prevailed, B&G could have secured attorneys' fees from the class as a whole. Although a properly certified class might not have agreed to the same one-third contingency fee that Brundle did, the district court might well have awarded a fee significantly higher.").

"The percentage-of-the-fund approach rewards counsel for efficiently and effectively bringing a class action case to a resolution, rather than prolonging the case in the hopes of artificially increasing the number of hours worked on the case to inflate the amount of attorney's fees on an hourly basis." *DeWitt v. Darlington Cty.*, No. 4:11-cv-00740-RBH, 2013 U.S. Dist. LEXIS 172624, at *19 (D.S.C. Dec. 6, 2013). Moreover, the percentage of fund approach eliminates the burden on the court to engage in a detailed review and calculation of attorneys'

_____

[3] *See also Jones v. Dominion Resource Services, Inc.*, 601 F. Supp. 2d 756, 759 (S.D. W. Va. 2009) ("The percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases."); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (holding that a district court abused its discretion by calculating fees strictly based on the dollar amount paid to approved claimants, and expressly rejected the idea that basing an award on the benefit available to the class would create a windfall for class counsel). As the Second Circuit reasoned in *Masters*, "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not." *Id.*

17

hours and rates. *See In re Abrams & Abrams, P.A.*, 605 F.3d 238, 246 (4th Cir. 2010). "It is also viewed as the preferable method in cases such as this one, where the Plaintiff[] agreed to pay counsel on a contingency fee basis." *In re LandAmerica 1031 Exch. Servs., Inc. I.R.S. 1031 Tax Deferred Exch. Litig.*, No. 09-0054, 2012 WL 5430841, at *2 (D.S.C. Nov. 7, 2012).

An award of attorney's fees in a class action must be "reasonable." Fed. R. Civ. P. 23(h). Although the Fourth Circuit has not yet identified factors for district courts to apply when assessing the reasonableness of a proposed percentage award, the Circuit has, in at least one case, utilized a set of factors identified and employed by the Fifth Circuit. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 & n.28 (4th Cir. 1978). Accordingly, many district courts employ these so-called *Barber* factors,[4] an approach the Fourth Circuit has affirmed. *In re MRRM, P.A.*, 404 F.3d 863, 867–68 (4th Cir. 2005) (holding that the district court reasonably applied the *Barber* factors when assessing a common fund fee award). The *Barber* factors include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber*, 577 F.2d at 226 & n.28. At bottom, the twelve *Barber* factors focus the Court's analysis on four main issues: the value of counsel's work and the results obtained (factors 3, 8, and 9); the risks and obstacles counsel faced (factors 2, 4, 6, 7, and 10); and

---

[4] *Smith v. Krispy Kreme Doughnut Corp.*, 2007 WL 119157, *1 (M.D.N.C. 2007) (applying *Barber* factors to a percentage award); *Edmonds v. U.S.*, 658 F. Supp. 1126, 1143 n.37 (D.S.C. 1987) ("The [*Barber*] factors . . . can be used in analyzing a fee either based on the percentage method, or the lodestar method.").

quantitative inputs like time and labor expended, the customary fee for like work, and other awards in similar cases. (factors 1, 5, 7, and 12).[5]

All of these factors weigh in favor of approving the requested attorneys' fees.

### a. Class Counsel Achieved Exceptional Results for the Class

In determining whether a fee award is reasonable, the most critical factor is the results achieved, *i.e.*, the overall result and benefit to the class from the litigation. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006); *In re Abrams & Abrams, P.A.*, 605 F.3d at 247 (internal quotation marks omitted).

As described above, the Settlement makes $375,000 available for the benefit of the Settlement Class. Each claimant will receive a cash payment of $50, which exceeds the typical value of claims in such settlements. *See, supra* at pp. 14-15.

The quality of Class Counsel's representation in this case also supports the fee award. "[P]rosecution and management of a complex national class action requires unique legal skills and abilities." *Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987). The quality of Class Counsel's legal work is evidenced by the substantial benefit conferred to the Settlement Class in

---

[5] Recognizing that *Barber* is not a common fund case, some other district courts in this Circuit have instead looked to the seven-factor test adopted by the Third Circuit in *In re Cendant Corp. Prides Litig.* to determine the amount of a reasonable percentage award. *See In re Wachovia Corp. ERISA Litig.*, 2011 WL 5037183, *3–4 (W.D.N.C. 2011) (citing cases). The *Cendant* factors include:

> (1) the results obtained for the Class; (2) objections by members of the Class to the settlement terms and/or fees requested by counsel; (3) the quality, skill, and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) public policy; and (7) awards in similar cases.

*Id.* (internal quotation marks omitted). Under either set of guidelines, however, the Courts reasonableness analysis would focus on the four categories described above.

19

the face of significant litigation obstacles. Class Counsel's work required the acquisition and analysis of a significant amount of factual and legal information.

Class Counsel's analysis of the issues in this action, litigation strategy, and diligence in prosecuting this action support the requested award. Class Counsel vigorously litigated this matter. Kaufman Decl. ¶¶ 2, 14-16. Class Counsel's work was necessary to resolve this action, and obtain significant monetary relief for the Settlement Class. Plaintiff and the Settlement Class benefited from the high caliber representation of Class Counsel, including Class Counsel's extensive TCPA class action experience. *See id*. ¶¶ 9-13; Coleman Decl. ¶¶ 2-4.

Given the monetary benefit to the Settlement Class, especially in light of the financial condition of HBU and Meteor Learning, the risks of litigation, and the ever-changing TCPA landscape, including the multiple changes to the interpretation of what constitutes an autodialer during the pendency of this case.

### b. The Risks of Litigation and the Novelty and Complexity of the Issues Justify the Requested Fees

Courts have long recognized that "particularly in class action suits, there is an overriding public interest in favor of settlement,' ... because ... 'class action suits have a well-deserved reputation as being most complex.'" *In re Pool Prods. Distrib. Market Antitrust Litig.*, 310 F.R.D. 300, 316 (E.D. La. 2015) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). "Settlement 'has special importance in class actions with their notable uncertainty, difficulties of proof, and length.'" *Montoya v. PNC Bank, N.A.*, No. 14-cv-20474-Goodman, 2016 U.S. Dist. LEXIS 50315, at *26 (S.D. Fla. Apr. 13, 2016).

"The importance of ensuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee." *In re*

*Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008); *see Berry v. Wells Fargo & Co.*, No. 3:17-cv-00304-JFA, 2020 U.S. Dist. LEXIS 143893, at *35 (D.S.C. July 29, 2020) ("class counsel undertook to prosecute this action without any assurance of payment for their services. Counsel's entitlement to payment was entirely dependent upon achieving a good result for Plaintiff and the class. Contingency fee arrangements are customary in class action cases and such arrangements are usually one-third or higher. Therefore, this factor supports the reasonableness of the requested fee award" (internal citation omitted)).

Because Class Counsel were working entirely on a contingency basis, only a successful result – at trial or by settlement – would result in any fees and recovery of costs. Kaufman Decl. at ¶ 19. Nevertheless, Class Counsel invested significant resources into this case – three years of hard-fought litigation and over thirty-four thousand dollars in costs to zealously promote the Class's interests. Kaufman Decl. ¶ 20; Coleman Decl. ¶¶ 5-6. The contingent nature of Class Counsel's representation strongly favors approval of the requested fee.

In addition to the risks posed by virtue of proceeding with a contingency class action, "[t]he risk that further litigation might result in Plaintiffs not recovering at all, particularly in a case involving complicated legal issues, is a significant factor in the award of fees." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046-7 (internal citation omitted). The risk of no recovery here—and in complex cases of this type more generally—is real. In numerous hard-fought lawsuits, plaintiffs' attorneys (including the undersigned) have received little or no fee—despite *years* of excellent, professional work—due to the discovery of facts unknown when the case started, changes in the law while the case was pending, or a decision of a judge, jury, or court of appeals. *See, e.g., Hubbard v. BankAtlantic Bancorp, Inc.,* 688 F.3d 713 (11th Cir. 2012) (affirming district court's ruling overturning jury verdict in favor of plaintiff class); *In re*

*Oracle Corp. Secs. Litig.,* No. 01- cv-00988-SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd,* 627 F.3d 376 (9th Cir. 2010) (affirming summary judgment for defendants after eight years of litigation). Here, major hurdles remain in this litigation, including class certification and summary judgment. *See supra* at 13. Moreover, Class Counsel accepted substantial risk in taking this case given the possibility that this Court, the Supreme Court, or FCC could take action that might extinguish Plaintiff's claims, as described *supra* at 11-13.

In addition, in a TCPA case such as this, the potential damages could bankrupt HBU or Meteor Learning. *See supra* at 14. The uncertainty created by this environment makes the certainty created the Settlement achieved by Plaintiff's Counsel even more valuable and prudent for the Class.

### c.  **Awards in Similar Cases Demonstrate the Requested Fees are Reasonable**

Class Counsel's request for an award of attorneys' fees totaling less than one-quarter of the Settlement Fund is less than the typical fee awards in similar cases across the country. *See Krakauer v. Dish Network, L.L.C.,* No. 1:14-CV-333, 2019 U.S. Dist. LEXIS 220380, at *2 (M.D.N.C. Dec. 23, 2019) (Court awarded attorney's fees of one-third of a $61,000,000 judgment in TCPA case); *Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 639 F. App'x 880, 883–84 (3d Cir. 2016) (affirming attorneys' fees constituting one-third of a settlement fund in a TCPA case); *Gergetz v. Telenav, Inc*., No. 16-cv-04261-BLF, 2018 U.S. Dist. LEXIS 167206, at *21 (N.D. Cal. Sep. 27, 2018) (approving fees of 30% of the settlement fund in a TCPA case which settled after briefing of and prior to ruling on defendant's motion to dismiss and motion to stay); *Vandervort v. Balboa Capital Corp*., 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding fees of one-third on TCPA class action); *Gottlieb v. Citgo Petroleum Corp.*, No. 9:16-cv-81911, 2017 U.S. Dist. LEXIS 197382, at *7 (S.D. Fla. Nov. 29, 2017) (granting

fees and costs amounting to one-third of the $8,000,000 TCPA settlement fund); *Elzen v. Educator Grp. Plans, Ins. Servs.*, No. 1:18-cv-01373-WCG, 2019 U.S. Dist. LEXIS 170798, at *6 (E.D. Wis. Oct. 2, 2019) (awarding Class Counsel fees of one-third the Settlement Fund in a TCPA class action).[6]

Class Counsel is requesting attorneys' fees totaling less than one quarter of the Settlement Fund, which is justified in light of the excellent outcome, and particularly when compared to the risks attendant to this Action and the fees awarded in similar class actions. Kaufman Decl. ¶ 15.

### d. A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fees

As stated earlier, the percentage-of-fund method is the "preferred" approach in the Fourth Circuit, and comports with class action practice nationwide, where the "vast majority" of courts of appeal now direct or permit district courts to award a percentage from the common fund. Manual for Complex Litig., § 14.121 (4th ed. 2004). The percentage method provides "appropriate financial incentives" necessary to "attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so." *In re*

---

[6] *See also Martin v. Dun & Bradstreet, Inc.*, No. 12-215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. No. 63) (one-third of total fund); *Hanley v. Fifth Third Bank*, No. 12-1612 (N.D. Ill.) (Dkt. No. 87) (awarding attorneys' fees of one-third of total settlement fund; *Cummings v. Sallie Mae*, No. 12-9984 (N.D. Ill. May 30, 2014) (Gottschall, J.) (Dkt. No. 91) (one-third of common fund); *Desai v. ADT Sec. Servs., Inc.*, No. 11-1925 (N.D. Ill. June 21, 2013) (Bucklo, J.) (Dkt. No. 243) (one-third of the settlement fund); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08-5959 (N.D. Ill. Dec. 21, 2011) (Kennelly, J.) (Dkt. No. 116) (fees equal to one-third of the settlement fund plus expenses; *CE Design Ltd. v. CV's Crab House North, Inc.*, No. 07-5456 (N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (Dkt. No. 424) (fees equal to one-third of settlement plus expenses); *Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09-776 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (Dkt. No. 100) (fees and expenses equal to 33% of the settlement fund); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-5953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Dkt. No. 146) (fees of one-third of settlement plus expenses); *Hinman v. M&M Rentals, Inc.*, No. 06-1156 (N.D. Ill. Oct. 6, 2009) (Bucklo, J.) (Dkt. No. 225) (fees and expenses equal to 33% of the fund).

23

*WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y 2005). In addition, "from a public policy standpoint, the [percentage] method of calculating fees more appropriately aligns the interests of the class with the interests of class counsel—the larger the value of the settlement, the larger the value of the fee award." *Bussie v. Allmerica Financial Corp.*, No. 97-40204, 1999 WL 342042, at *2 (D. Mass. May 19, 1999) (internal quotation marks and citations omitted).

Despite the advantages and popularity of the percentage-of-fund method, however, some courts employ what is known as a lodestar crosscheck—analyzing the value of counsel's work in relation to their hours and hourly billing rates—to confirm the reasonableness of the percentage award. Although such analysis is unnecessary and, in some respects, problematic,[7] a lodestar crosscheck in this case provides further support for Class Counsel's requested fee.

To calculate the lodestar, the Court "multipl[ies] the number of hours the prevailing party reasonably expended on the litigation … by a reasonable hourly rate for the region and for the experience of the lawyer." *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab.*

---

[7] In many respects, the lodestar crosscheck reintroduces the same bad policy and perverse incentives that the increasingly popular percentage-of-fund method has overcome. If class counsel believe that courts will limit their fee to some multiple of their lodestar, then they will have the same undesirable incentives they would if courts used the lodestar method alone: to be inefficient, perform unnecessary projects, delay results, and overbill and overstaff work in order to run up their lodestar. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n. 5 (9th Cir. 2002) ("The lodestar method is merely a cross- check on the reasonableness of a percentage figure, and it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee . . . ."). The lodestar crosscheck also caps the amount of compensation class counsel can receive from a settlement, thereby misaligning their incentives from those of class members, and blunting their incentive to achieve the largest possible award for the class. For example: suppose a class action lawyer had incurred a lodestar of $1 million in a class action case. If that counsel believed that a court would not award him a one-third fee if it exceeded twice his lodestar, then he would be rationally indifferent between settling the case for $6 million or $60 million.

24

*Litig.)*, 654 F.3d 935, 941 (9th Cir. 2011). This base "unadorned" lodestar figure is "presumptively reasonable." *Id.* "Courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases. This mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases. In common fund cases, attorneys whose compensation depends on their winning the case must make up in compensation in the cases they win for the lack of compensation in the cases they lose." *Vizcaino*, 290 F.3d at 1051 (internal citation omitted). "When using lodestar method as a "cross-check," the Court needs not apply the "exhaustive scrutiny" typically mandated, and the Court may accept the hours estimates provided by Lead Counsel." *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 264 (E.D. Va. 2009).

Class Counsel have invested hundreds of hours in litigating this action over the course of three years of contentious litigation, which included significant written fact discovery, third party discovery, which included a major public records request campaign, expert disclosures, and nine depositions, protracted discovery disputes, requiring significant court intervention, and dispositive motion and class certification briefing. Kaufman Decl. ¶ 15.

Since the Court denied Defendant's motion for reconsideration, ordered Defendant and Meteor Learning to produce discovery, and lifted the stay on pending case activities on January 17, 2020 (ECF No. 61), lead class counsel, Avi Kaufman, alone has spent over 200 hours litigating this case, including but not limited to:

- Discovery matters, including continued meet and confers concerning discovery issues between the parties and Meteor Learning, and reviewing Defendant and third party productions of documents, preparing for and attending eight

25

depositions, including those of the parties, Plaintiff's experts, and Defendant's third party marketer.

- Preparing and analyzing expert reports, including working with Plaintiff's experts Aaron Woolfson and Randall Snyder to prepare their expert disclosures and reports, and analyzing Defendant's expert reports.

- Motion practice, including but not limited to responding to Defendant's motion to stay pending the Supreme Court's decision in *Facebook*, briefing Plaintiff's motion for class certification, analysis of Defendant's motion to exclude Plaintiff's expert, and drafting the motions for preliminary approval and final approval of the settlement.

- Settlement, including preparing for and attending mediation, continuing negotiations, drafting and revising the class action settlement agreement and notices, and overseeing the settlement administration.

Kaufman Decl. ¶ 16.

Counsel provides the above summary of some of the significant work done in this matter in order to "identify the general subject matter of [their] time expenditures." *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983); *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) ("a summary of the time spent on a broad category of tasks such as pleadings and pretrial motions" satisfies the "basic requirement"); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 307 (3d Cir. 2005) (The lodestar cross-check is used to assess the reasonableness of the percentage method, and district courts "need not review actual billing records" and are free to rely on time summaries submitted by attorneys.).

Applying a conservative hourly rate of $500[8] and limiting the hours considered to lead counsel's efforts since the stay was lifted in 2020, the lodestar crosscheck would result in a negative multiplier based on the request for less than 25% of the fund. "Courts have generally held that a lodestar multiplier falling between 2 and 4.5 demonstrate a reasonable attorney's fees." *McClaran v. Carolina Ale House Operating Co., LLC*, No. 3:14-cv-03884-MBS, 2015 U.S. Dist. LEXIS 112985, at *6 (D.S.C. Aug. 26, 2015); *Berry v. Wells Fargo & Co.*, No. 3:17-cv-00304-JFA, 2020 U.S. Dist. LEXIS 143893, at *40 (D.S.C. July 29, 2020) ("lodestar multiplier of 4.24—well within the range routinely approved"). Here, there is a negative multiplier based on Class Counsel's significant investment of attorney time, warranting award of the full amount of fees requested.

### a. Class Counsel's Request for Expenses Is Reasonable

Rule 23(h) also permits the Court to "award . . . nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Generally, courts permit recovery of costs advanced for litigation expenses, including document production, consulting with experts, and court and mediation costs." *Robinson v. Carolina First Bank NA*, No. 7:18-cv-02927-JDA, 2019 U.S. Dist. LEXIS 103831, at *49 (D.S.C. June 21, 2019) (granting full reimbursement of expenses where "Class Counsel's expenses were incidental and necessary to the representation of Plaintiff and the Class and are in line with costs charged to individual clients who pay out of

---

[8] Class Counsel have been awarded attorneys' fees in TCPA class actions based on lodestar cross-checks using hourly rates of up to $800. *Izor v. Abacus Data Sys.*, No. 19-cv-01057-HSG, 2020 U.S. Dist. LEXIS 239999, at *26-27 (N.D. Cal. Dec. 21, 2020) (awarding 30% of the settlement fund and finding "that the billing rates used by Class Counsel [including $800 for Mr. Kaufman] to calculate the lodestar are reasonable and in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation."); *Bulette v. W. Dental Servs.*, No. 3:19-cv-00612-MMC (N.D. Cal. Jul. 17, 2020) (awarding attorneys' fees of twenty-five percent of a Settlement Fund plus expenses, and reviewing reasonableness based on a lodestar cross-check of Mr. Kaufman's hourly rate of $800).

pocket.") The Settlement also permits Class Counsel to seek reimbursement of their reasonable expenses.

Class Counsel have incurred expenses in the prosecution of this action totaling $34,612.67 for filing fees, service of process, courtesy copy mailings, expert fees, court reporting services, travel to and from a deposition, and mediation fees. Kaufman Decl. ¶¶ 17-18; Coleman Decl. ¶¶ 5-6. These expenses were reasonable and necessary for the prosecution of this action and are the types of expenses that would typically be billed to clients in non-contingency matters, and therefore should be approved. *Id.*

## VII.   CONCLUSION

For the reasons stated above, Plaintiff respectfully request that the Court grant this Motion and enter the Proposed Final Approval Order, approving the parties' proposed Settlement Agreement in full, and awarding a service award to Plaintiff and Class Counsel fees and expenses. The Court has already provisionally certified the Settlement Class, and, for the same reasons, Plaintiff requests that the Court finally certify the Settlement Class.

A proposed Final Approval Order is attached as Exhibit 3.

Respectfully submitted,

Dated:  April 16, 2021

*/s/ Avi R. Kaufman*
Avi R. Kaufman
Florida State Bar # 84382
Kaufman P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
Email: kaufman@kaufmanpa.com

Stefan Coleman
Florida State Bar # 30188
Law Offices of Stefan Coleman, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Email: Law@StefanColeman.com

28

*Counsel for Plaintiff*

*/s/ Ted Johnson*
Ted Lewis Johnson
North Carolina State Bar # 39791
PO Box 5272
Greensboro, NC 27435
Telephone: (336) 252-8596
Email: tedlewisjohnson@tedlewisjohnson.com

*Local Civil Rule 83.1(d) Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 16, 2021, I electronically filed the foregoing document

with the Clerk of the Court using CM/ECF, which is being served this day on all counsel of record

via transmission of Notice of Electronic Filing generated by CM/ECF.


*/s/ Avi R. Kaufman*

29